| WILLIAM THOMAS COPPAGE | * | NO. 2020-CA-0419 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| TRANSDEV SERVICES, INC., NEW ORLEANS REGIONAL TRANSIT AUTHORITY | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-01016, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*
(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Dale N. Atkins)

Leonard L. Levenson
Christian W. Helmke
Donna R. Barrios
LEONARD L. LEVENSON & ASSOCIATES
650 Poydras Street
Suite 2750
New Orleans, LA 70130

Warren A. Forstall, Jr.
LAW OFFICES OF WARREN A. FORSTALL, JR.
320 North Carrollton Avenue
Suite 200
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLANT

Kris Patrick Kiefer
Megan C. Kiefer
Ignatz Gerard Kiefer, Jr.
Amanda K. Gammon
KIEFER & KEIFER
2310 Metairie Road
Metairie, LA70001

      COUNSEL FOR DEFENDANT/APPELLEE

DNA
JFM
DLD

This is a personal injury case. Appellant, William Thomas Coppage ("Mr. Coppage"), appeals the trial court's June 30, 2020 judgment granting the Motion to Enforce Settlement filed by Appellees, Transdev Services, Inc. and the New Orleans Regional Transit Authority, (collectively, "Transdev"). For the following reasons, we reverse the trial court's judgment and remand for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

On February 4, 2017, Mr. Coppage sustained injuries when he fell on a bus owned and operated by Transdev. On February 1, 2018, Mr. Coppage filed suit against Transdev, and was represented by attorney Rhett Powers, of the Law Offices of Warren A. Forstall, Jr., LLC.

In an effort to resolve Mr. Coppage's claims, Mr. Powers engaged in settlement negotiations with counsel for Transdev. On August 26, 2019, Mr. Powers made a settlement offer of $25,000, all-inclusive, to counsel for Transdev to resolve Mr. Coppage's claims and dismiss the pending suit. Later that same day, counsel for Transdev emailed correspondence (the "August 26, 2019 correspondence") to Mr. Powers, confirming acceptance of the all-inclusive settlement offer and requesting Mr. Powers' signature to confirm the agreement,

1

which Transdev asked be returned by email or fax. Transdev also asked for Mr. Coppage's social security number and Mr. Powers' tax identification number to issue the settlement check, and explained that Transdev could not issue the settlement check until Mr. Powers returned the signed letter. After writing the requested information along with payment instructions on the August 26, 2019 correspondence, Mr. Powers signed and returned the letter to counsel for Transdev.

In October 2019, Mr. Powers contacted counsel for Transdev and informed him that Mr. Coppage was not agreeable to the settlement the parties discussed on August 26, 2019. On November 22, 2019, counsel for Transdev mailed Mr. Powers the $25,000 settlement check along with a cover letter stating that the check represented a full and final settlement of all of Mr. Coppage's claims against Transdev.

Transdev also enclosed two copies of a Receipt and Release and two copies of a Motion to Dismiss with Prejudice, asking Mr. Powers to have Mr. Coppage execute one copy of each and return them to Transdev, mandating that Mr. Coppage was not to negotiate the settlement check until the Receipt and Release and the Motion to Dismiss with Prejudice were signed and returned to Transdev. Transdev noted that it was aware Mr. Coppage was no longer agreeing to the settlement, writing:

> Furthermore, it my understanding that your client is refusing to accept the settlement as agreed. As such, my client has requested that I proceed with filing a Motion to Enforce the Settlement.

Mr. Coppage and Mr. Powers did not return the signed Receipt and Release and Motion to Dismiss with Prejudice. Accordingly, on December 9, 2019, Transdev filed a Motion to Enforce Settlement with the August 26, 2019 correspondence attached as an exhibit.

2

On February 6, 2020, additional counsel enrolled in the lawsuit to represent Mr. Coppage for the limited purpose of representing his interest in opposing the Motion to Enforce Settlement, with Mr. Powers also remaining as counsel of record.

On February 27, 2020, Mr. Coppage opposed the Motion to Enforce Settlement, arguing that a valid compromise had not been reached between the parties. Mr. Coppage attached an affidavit executed by his attorney Mr. Powers to his opposition. Mr. Powers attested:

> During his representation of William Thomas Coppage, he proposed a possible settlement of Mr. Coppage's claim for $25,000.00;
>
> He mistakenly believed that William Thomas Coppage would agree to a settlement in the sum of $25,000.00;
>
> William Thomas Coppage did not, at any time, consent to settle his claim for $25,000.00;
>
> Prior to receiving anything from the Defendants, including, but not limited to, the Receipt and Release Documents, the Motion to Dismiss, and settlement draft via correspondence from the Defendants dated November 22, 2019, he notified the Defendants in late October 2018[sic] that William Thomas Coppage did not consent to the settlement amount; and
>
> At no time did William Thomas Coppage agree to the condition of or the terms and conditions of the Receipt and Release Documents and the Motion to Dismiss because the Defendants have never presented them to William Thomas Coppage for his approval and consent.

After Transdev replied to Mr. Coppage's opposition, the trial court held a hearing on the Motion to Enforce Settlement on June 19, 2020. On June 30, 2020, the trial court rendered judgment, granting Transdev's Motion to Enforce Settlement and holding that the parties' August 26, 2019 correspondence was a valid and enforceable compromise. From this judgment, Mr. Coppage appeals.

3

## DISCUSSION

On appeal, Mr. Coppage assigns two errors: (1) the trial court erred in granting the Motion to Enforce Settlement because Transdev placed new conditions upon the settlement, which were never accepted by Mr. Coppage or his counsel; and (2) the trial court improperly applied the applicable law regarding settlement agreements, in effect overruling this Court's decision in *Townsend v. Square*, 1994-0758 (La. App. 4 Cir. 9/29/94), 643 So.2d 787. Transdev counters that a valid compromise was perfected between the parties and the trial court's judgment granting Transdev's Motion to Enforce Settlement was proper.

"This Court reviews a judgment granting a motion to enforce settlement under the manifest error or clearly wrong standard of review." *800 Iberville St. Ltd. P'ship v. V. Rest. Grp., LLC*, 2016-0799, p. 7 (La. App. 4 Cir. 6/7/17), 221 So.3d 205, 210 (internal citations omitted). "The manifest error standard requires that this Court review the record in its entirety, not to determine whether the trial court's findings are wrong, but whether they find reasonable support in the record, even though the reviewing court is convinced that its interpretation is more reasonable." *Succession of Kirschman*, 2019-1101, p. 5 (La. App. 4 Cir. 7/1/20), 302 So.3d 552, 556 (citing *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882-83 (La. 1993)). Accordingly, "[t]he trial court's judgment determining the existence, validity and scope of a compromise agreement depends on a finding of the parties' intent, which is an inherently factual finding." *Morris, Lee & Bayle, LLC v. Macquet*, 2014-1080, p. 14 (La. App. 4 Cir. 3/23/16), 192 So.3d 198, 208.

"However, statutory interpretations are a question of law." *Lemoine v. Thornton*, 2013-0889, p. 7 (La. App. 3 Cir. 2/12/14), 161 So.3d 666, 670 (internal citations omitted). "Although a reviewing court defers to a trial court's reasonable

decision on a question or matter properly within the trial court's discretion, if the trial court's decision is based on an erroneous interpretation or application of the law, such an incorrect decision is not entitled to deference." *Id*. (citing *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067, 1071-72 (La. 1983)).

Mixed questions of law and fact are also subject to the manifest error standard of review. *Marietta Trust v. J.R. Logging Inc*., 2016-1136, p. 4 (La. App. 1 Cir. 5/11/17), 225 So. 3d 1144, 1147-48(internal citations omitted).

The dispositive issue in this appeal is whether Mr. Powers had the authority to enter into a settlement on behalf of Mr. Coppage when he executed the August 26, 2019 correspondence, thereby creating a valid and enforceable compromise. Accordingly, we begin our discussion with La. C.C. art. 3071, which provides that "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. C.C. art. 3072 further provides that, in order to be valid and enforceable, "[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings."

"A compromise, as any other contract, may be contained in two writings rather than one." *Sims v. USAgencies Cas. Ins. Co*., 2010-1120, p. 7 (La. App. 1Cir. 12/22/10), 68 So.3d 570, 574. The purpose of the writing requirement is to serve as proof of the agreement and the acquiescence therein. *Sullivan v. Sullivan*, 1995-2122, p. 4 (La. 4/8/96), 671 So.2d 315, 317 (citing *Felder v. Ga. Pac. Corp.*, 405 So.2d 521, 523 (La. 1981)). Until the parties sign a written document or documents demonstrating their consent to the terms of a proposed settlement agreement, a party is free to change his or her mind. *Id.*, p. 5, 671 So.2d at 318.

5

"In order to be enforceable under [La. C.C.] Article 3071, a compromise either must be reduced to writing and signed by the parties or their agents, or must be recited in open court and be capable of transcription from the record of the proceeding." *Lavan v. Nowell*, 1998-0284, p. 2 (La. 4/24/98), 708 So.2d 1052, 1052 (footnote omitted).

On its face, it appears as though the August 26, 2019 correspondence executed by Mr. Powers is valid under La. C.C. arts. 3071 and 3072. The document was reduced to writing, as required by La. C.C. art. 3072. Additionally, it was signed by agents for both parties, evidencing their agreement to settle the case. Importantly, however, the August 26, 2019 correspondence between the parties is only a valid and enforceable settlement agreement if counsel for both parties, as agents of the parties, had the express authority to settle the claims.

La. C.C. art. 2997 provides, in pertinent part, that "[a]uthority also must be given expressly to . . . [e]nter into a compromise or refer a matter to arbitration."

Notably, "the signature of a party's attorney alone is not sufficient to affect a compromise unless the required authorization is expressly given as provided under" La. C.C. art. 2997. *Lemoine*, 2013-0889, p. 9, 161 So.3d at 671. It is well-settled that a party's counsel of record does not have authority to settle a client's claim without his client's clear and express consent. *Hayes v. Rollins*, 435 So.2d 1151, 1152 (La. App. 3 Cir. 1983); *Lemoine*, 2013-889, p. 9, 161 So.3d at 671. "The general authority granted to an attorney in an attorney/client contract of employment 'to settle' the client's case constitutes only authority to negotiate a settlement." *Bennett v. Great Atl. & Pac. Tea Co., Inc.*, 1995-0410, p. 4 (La. App. 1 Cir. 11/9/95), 665 So.2d 84, 86.

6

On appeal, Mr. Coppage contends that the August 26, 2019 correspondence was not a valid and enforceable compromise and settlement pursuant to La. C.C. art. 2997 because Mr. Coppage did not give his express consent or authority for Mr. Powers to accept a settlement of his injury claims. Transdev counters that the August 26, 2019 correspondence was a valid and enforceable agreement between the parties pursuant to La. C.C. art. 3071 because Mr. Powers made an offer to settle his client's personal injury claim for $25,000 all-inclusive, in exchange for the dismissal of Mr. Coppage's claims, which Transdev accepted. Transdev maintains that Transdev was never notified that Mr. Powers did not have authority to enter into a settlement on behalf of his client and that the agreement, which was reduced to a single writing that contained the parties' signatures to evidence their mutual agreement and intent to settle the case, should be enforced.

In his opposition to the Motion to Enforce Settlement, Mr. Coppage attached the affidavit of Mr. Powers. In the affidavit, Mr. Powers attested under oath that when he proposed a possible settlement of Mr. Coppage's claim for $25,000, he lacked Mr. Coppage's express authority to settle the case and, instead, only (mistakenly) believed that Mr. Coppage would agree to the $25,000 settlement. Mr. Powers further attested that Mr. Coppage never gave his consent to settle the claim, and that Mr. Powers notified Transdev that Mr. Coppage did not agree to the settlement in late October 2019. The record shows that, in the months between the August 26, 2019 correspondence and when Transdev tendered the settlement check to Mr. Powers, Transdev received notification that Mr. Coppage did not agree to the settlement because Transdev said as much in its November 22, 2019 correspondence, wherein it enclosed the settlement check. The record further shows that Mr. Coppage did not cash the $25,000 check that Trandev sent, nor did

he execute the Receipt and Release and the Motion to Dismiss, as Transdev requested.

"While attorneys are presumed to have authority to negotiate a settlement proposal for their clients, they may not enter a binding agreement without the client's clear and express consent." *Townsend*, 1994-0758, p. 8, 643 So.2d at 790 (citing *F & S Equip. Co., Inc. v. Int'l Matex Tank Terminals*, 469 So.2d 256, 257 (La. App. 4 Cir. 1985). Nevertheless, Louisiana law presumes that defendants are aware of the requirement of obtaining the explicit consent of the plaintiff to settle, and that defendants "assume the risk of their failure to determine that such requirements have been met." *Id.*

Here, the record shows that Mr. Powers did not have his client's clear and express consent to enter into a binding agreement to settle with Transdev. *See, e.g., Tran v. Allstate Ins. Co.*, 2001-0675, p. 5 (La. App. 4 Cir. 12/27/01), 806 So.2d 103, 106 (denying a motion to enforce settlement where "[t]here is nothing in the record to indicate that the plaintiff ever gave her attorney the express consent necessary to accept the terms of this settlement."). It is clear that Transdev is not only presumed to have been aware of the need for Mr. Powers to have Mr. Coppage's clear and express consent to settle, but that Transdev was actually aware that Mr. Coppage did not give his consent to Mr. Powers to settle, as Transdev admitted this knowledge before filing its Motion to Enforce Settlement.

Based on the facts and record before this Court, we find the trial court committed manifest error in granting Transdev's Motion to Enforce Settlement Agreement. The August 26, 2019 correspondence signed by Mr. Coppage's attorney in no way indicated that Mr. Powers had the specific authority from Mr. Coppage to settle and dismiss the personal injury claim, and Mr. Powers explicitly

told Transdev and attested that he did not have Mr. Coppage's authority to settle when he signed the August 26, 2019 correspondence.[1] Accordingly, the trial court's judgment granting the Motion to Enforce Settlement is reversed.

## DECREE

For the foregoing reasons, we reverse the trial court's June 30, 2020 judgment granting Transdev's Motion to Enforce Settlement, and remand this matter for further proceedings.

**REVERSED AND REMANDED**

---

[1] Having found that Mr. Powers lacked Mr. Coppage's clear and express consent to settle, we do not address whether Transdev improperly placed new conditions on the settlement to which Mr. Coppage did not agree and whether that vitiated the settlement.